**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| **JOSEPH TROTTIER**, *Individually and behalf of all other similarly situated.* | |
| *Plaintiff,* | Case No.: CV423-083 |
| v. | DEMAND FOR JURY TRIAL |
| **TMX FINANCE CORPORATE SERVICES, INC.,** | |
| *Defendant.* | |

**CLASS ACTION COMPLAINT**

Plaintiff Joseph Trottier ("Plaintiff") brings this Class Action Complaint against TMX Finance Corporate Services, Inc. ("Defendant"), individually and on behalf of all others similarly situated ("Class Members"), and alleges, upon personal knowledge as to his own actions and his counsels' investigations, and upon information and belief as to all other matters, as follows:

**I. INTRODUCTION**

1.    Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personal identifiable information ("PII")[1] of more

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal

than 4.8 million individuals, including, but not limited to, name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address.

2.    According to Defendant's website, "provides consumer credit products under the TitleMax®, TitleBucks®, and InstaLoan® brands. Since 1998, we have provided access to credit for consumers who are underserved by traditional lenders."[2]

3.    Prior to and through February 3, 2023, Defendant obtained the PII of Plaintiff and Class Members, including by collecting it directly from Plaintiff and Class Members.

4.    Prior to and through February 3, 2023, Defendant stored the PII of Plaintiff and Class Members, unencrypted, in an Internet-accessible environment on Defendant's network.

5.    On or before February 3, 2023, Defendant learned of a data breach on its network that occurred on or around February 3, 2023 to February 14, 2023 (the "Data Breach").

---

or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] *See* https://www.tmxfinancefamily.com/what-we-do/ (last visited April 3, 2023).

6.  Defendant determined that, during the Data Breach, an unknown actor accessed and/or acquired the PII of Plaintiff and Class Members.

7.  On or around March 30, 2023, Defendant began notifying various states Attorneys General of the Data Breach.

8.  On or around March 30, 2023, Defendant began notifying Plaintiff and Class Members of the Data Breach.

9.  By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted PII that was accessed and/or acquired by an unauthorized actor included name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address.

10.  The exposed PII of Plaintiff and Class Members can be sold on the dark web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. Plaintiff and Class Members now face a lifetime risk of (i) identity theft, which is heightened here by the loss of Social Security numbers, and (ii) the sharing and detrimental use of their sensitive information.

11.    The PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiff and Class Members. In addition to Defendant's failure to prevent the Data Breach, Defendant waited more than three months after the Data Breach occurred to report it to the states Attorneys General and affected individuals.   Defendant has also purposefully maintained secret the specific vulnerabilities and root causes of the breach and has not informed Plaintiff and Class Members of that information.

12.    As a result of this delayed response, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm, including the sharing and detrimental use of their sensitive information. The risk will remain for their respective lifetimes.

13.    Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

14.    Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) the disclosure of their private information, and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

15.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiff and Class Members was compromised through disclosure to an unauthorized third party. Plaintiff and Class Members have a

continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. THE PARTIES

16.    Plaintiff is a citizen of Kenosha, Wisconsin and received a notice from Defendant that his private information had been breached. See, Exhibit 1.

17.    Defendant is a Georgia corporation with a principal place of business in Savannah, Georgia.

18.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff.  Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

19.    All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III. JURISDICTION AND VENUE

20.    This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class

Member, including Plaintiff, is a citizen of a state different from Defendant to establish minimal diversity.

21.    Defendant is a citizen of Georgia because it is a corporation formed under Georgia law with its principal place of business in Toccoa, Georgia.

22.    The Southern District of Georgia has personal jurisdiction over Defendant because it conducts substantial business in Georgia and this District and collected and/or stored the PII of Plaintiff and Class Members in this District.

23.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant operates in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Defendant collecting and/or storing the PII of Plaintiff and Class Members.

## IV. FACTUAL ALLEGATIONS

24.    Defendant collected the PII of Plaintiff and Class Members and stored it, unencrypted, on Defendant's internet-accessible network.

25.    Plaintiff and Class Members relied on this sophisticated Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII.

26.    Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties.

27.    On or about March 30, 2023, Defendant sent Plaintiff and Class Members a Notice of Data Breach and submitted sample notices to various states' Attorneys General.  Defendant informed Plaintiff and other Class Members that:

> TMX Finance Corporate Services, Inc., on behalf of itself, its parent TMX Finance LLC and its affiliates, many of which operate under the brands "TitleMax," "TitleBucks," and "InstaLoan" (collectively, "TMX"), is writing to inform you of a data breach that may have involved your personal information. TMX takes the privacy and security of your personal information very seriously. This letter provides information about the incident and resources available to help you protect your information.
>
> **What Happened?** On February 13, 2023, we detected suspicious activity on our systems and promptly took steps to investigate the incident. As part of that investigation, global forensic cybersecurity experts were retained. Based on the investigation to date, the earliest known breach of TMX's systems started in early December 2022. On March 1, 2023, the investigation confirmed that information may have been acquired between February 3,

2023 – February 14, 2023. We promptly began a review of potentially affected files to determine what information may have been involved in this incident. We notified the FBI but have not delayed this notification for any law enforcement investigation.

**What Information Was Involved?** The personal information involved may have included your name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address.

**What We Are Doing.** Our investigation is still in progress, but TMX believes the incident has been contained. We continue to monitor our systems for any suspicious activity. We have implemented additional security features, such as additional endpoint protection and monitoring, as well as resetting all employee

passwords. We continue to evaluate ways to further enhance the security of our systems.[3]

28.    Defendant reported to the Attorney General of Maine that name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address were impacted in the Data Breach.[4]

29.    Defendant admitted in the Notice of Data Breach and the sample notices and reports it sent to the states' Attorneys General that an unauthorized actor accessed sensitive information about Plaintiff and Class Members, including name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address.

30.    In response to the Data Breach, Defendant claims that "[w]e have implemented additional security features, such as additional endpoint protection and monitoring, as well as resetting all employee passwords. We continue to evaluate ways to further enhance the security of our systems."[5]

_____

[3] Group Exhibit 1 at 2 (sample Notice of Data Breach filed with Maine Attorney General).
[4] *Id.* at 1.
[5] *Id.*

31.    However, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not been shared with regulators or Plaintiff and Class Members, who retain a vested interest in ensuring that their information remains protected.

32.    The unencrypted PII of Plaintiff and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members.  Unauthorized individuals can easily access the PII of Plaintiff and Class Members.

33.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of PII for Plaintiff and Class Members.

34.    Because Defendant had a duty to protect Plaintiff's and Class Members' PII, Defendant should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

35.    In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for

cybersecurity attacks because warnings were readily available and accessible via the internet.

36.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[6]

37.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that *"[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies.* They breach networks, use specialized tools to maximize damage*, leak corporate information on dark web portals*, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[7]

38.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that *"[m]alicious actors have adjusted their ransomware tactics over time to include*

---

[6] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/Y2019/PSA191002 (last visited April 3, 2023).
[7] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), *available at* https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited April 3, 2023).

*pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion.*"[8]

39.     This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) cybercriminals were targeting big companies such as Defendant, (ii) cybercriminals were ferociously aggressive in their pursuit of big companies such as Defendant, (iii) cybercriminals were leaking corporate information on dark web portals, and (iv) cybercriminals' tactics included threatening to release stolen data.

40.     In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of Plaintiff and Class Members in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendant's type of business had cause to be particularly on guard against such an attack.

41.     Prior to the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

42.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the Social Security numbers and other sensitive data elements

---

[8]   U.S. CISA, Ransomware Guide – September 2020, *available at* https://www.cisa.gov/sites/default/files/publications/CISA_MS ISAC_Ransomware%20Guide_S508C_.pdf (last visited April 3, 2023).

within the PII to protect against their publication and misuse in the event of a cyberattack.

*Defendant Acquires, Collects, and Stores the PII of Plaintiff and Class Members.*

43.    Defendant acquired, collected, and stored the PII of Plaintiff and Class Members.

44.    By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

45.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

46.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[9]

47.    To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have

---

[9] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited April 3, 2023).

implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless

absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[10]

48.    To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform Regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

---

[10] *Id.* at 3-4.

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitory for cleanup of Event Logs
- Analyze logon events

**Harden Infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[11]

49.    Given that Defendant was storing the PII of more than 4.8 million individuals, Defendant could and should have implemented all of the above measures to prevent and detect ransomware attacks.

50.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII of more than 4.8 million individuals, including Plaintiff and Class Members.

*Securing PII and Preventing Breaches*

51.    Defendant could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the PII of Plaintiff and

---

[11] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited April 3, 2023).

Class Members.  Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

52.    Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

53.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

54.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[12] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[13]

---

[12] 17 C.F.R. § 248.201 (2013).
[13] *Id.*

55.    The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

*Value of Personal Identifiable Information*

56.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[14] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[15] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[16]

57.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit

---

[14] *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited April 3, 2023).

[15] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited April 3, 2023).

[16] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Feb. 24, 2023

and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

58.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[17]

59.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

60.    The fraudulent activity resulting from the Data Breach may not come to light for years.

61.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result,

---

[17] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*:
https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited April 3, 2023)

> studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[18]

62.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

63.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Classes are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

64.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data contained in Defendant's contract search tool, amounting to potentially tens of thousands of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

---

[18] *Report to Congressional Requesters,* GAO, at 29 (June 2007), *available at*: https://www.gao.gov/assets/gao-07-737.pdf (last visited April 3, 2023).

65.     To date, Defendant has offered Plaintiff and Class Members 12 months of complimentary credit monitoring and identify protection services through Experian. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

66.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

*Plaintiff's Experience*

67.     Plaintiff obtained loans or other services from Defendant or its affiliate prior to the Data Breach and received Defendant's Notice of Data Breach, dated March 30, 2023, on or about that date.

68.     As a result of the Data Breach, Plaintiff's sensitive information was accessed and/or acquired by an unauthorized actor.  The confidentiality of Plaintiff's sensitive information has been irreparably harmed.  For the rest of his life, Plaintiff will have to worry about when and how his sensitive information may be shared or used to his detriment.

69.     As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the

legitimacy of the Notice of Data Breach and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

70.    Additionally, Plaintiff is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

71.    Plaintiff stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

72.    Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

73.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially his Social Security number, being placed in the hands of unauthorized third parties and possibly criminals.

74.    Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## V. CLASS ALLEGATIONS

75.    Plaintiff brings this nationwide class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

76.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:

> All individuals whose PII was accessed and/or acquired in the data incident that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and Class Members on or around March 30, 2023 (the "Nationwide Class").

77.    Pursuant to Rule 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims on behalf of a separate subclass, defined as follows:

> All residents of Georgia whose PII was accessed and/or acquired in the data incident that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and Class Members on or around March 30, 2023 (the "Georgia Subclass").

78.    Pursuant to Rule 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims on behalf of a separate subclass, defined as follows:

> All individuals who obtained loans from Defendant on or before February 3, 2023, and whose PII was accessed and/or acquired in the data incident that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff

and Class Members on or around March 30, 2023 (the "Customers Subclass") (collectively, with the Nationwide Class and the Georgia Subclass, "the Classes").

79.    Excluded from the Classes are the following individuals and/or entities:

Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

80.    Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

81.    <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): The Classes are so numerous that joinder of all members is impracticable. Defendant reported to the Maine Attorney General that more than 4.8 million individuals were impacted in the Data Breach, and the Classes are apparently identifiable within Defendant's records.

82.    <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a.    Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b.     Whether Defendant had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c.     Whether Defendant had duties not to use the PII of Plaintiff and Class Members for non-business purposes;

d.     Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

e.     When Defendant actually learned of the Data Breach;

f.     Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.     Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.     Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.     Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

k.    Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

l.    Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.    Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

83.    <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's misfeasance.

84.    <u>Policies Generally Applicable to the Classes</u>: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

85.    <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of Class Members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Classes.  Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Classes and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

86.    <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

87.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

88.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

89.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

90.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to

refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

91.    Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

92.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.    Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    b.    Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    c.    Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e.  Whether Defendant breached the implied contract;

f.  Whether Defendant adequately and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members; and,

i.  Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## <u>COUNT I</u>

### NEGLIGENCE
### (On Behalf of the Plaintiff and the Nationwide Class)

93.  Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 92.

94.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Nationwide Class could and would suffer if the PII were wrongfully disclosed.

95.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Nationwide Class involved an unreasonable risk of harm to Plaintiff and the Nationwide Class, even if the harm occurred through the criminal acts of a third party.

96.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiff and the Nationwide Class in Defendant's possession was adequately secured and protected.

97.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove from an Internet-accessible environment the PII it was no longer required to retain pursuant to regulations and had no reasonable need to maintain in an Internet-accessible environment.

98.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiff and the Nationwide Class.

99.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Nationwide Class.  That special relationship arose because Defendant acquired Plaintiff's and the Nationwide Class's confidential PII in the course of its business practices.

100.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Nationwide Class.

101.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Nationwide Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

102.    Plaintiff and the Nationwide Class were the foreseeable and probable victims of any inadequate security practices and procedures.  Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Nationwide Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

103.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Nationwide Class. Defendant's misconduct included, but was not limited to,

its failure to take the steps and opportunities to prevent the Data Breach as set forth herein.  Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII of Plaintiff and the Nationwide Class, including basic encryption techniques freely available to Defendant.

104.    Plaintiff and the Nationwide Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

105.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Nationwide Class as a result of the Data Breach.

106.    Defendant had and continue to have a duty to adequately disclose that the PII of Plaintiff and the Nationwide Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Nationwide Class to (i) take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties and (ii) prepare for the sharing and detrimental use of their sensitive information.

107.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and the Nationwide Class.

108.    Defendant has admitted that the PII of Plaintiff and the Nationwide Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

109.   Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Nationwide Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Nationwide Class during the time the PII was within Defendant's possession or control.

110.   Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Nationwide Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

111.   Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiff and the Nationwide Class in the face of increased risk of theft.

112.   Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Nationwide Class by failing to have appropriate procedures in place to detect and prevent dissemination of the PII.

113.   Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove from the Internet-accessible environment any PII it was no longer required to retain pursuant to regulations and which Defendant had no reasonable need to maintain in an Internet-accessible environment.

114.  Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Nationwide Class the existence and scope of the Data Breach.

115.  But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the PII of Plaintiff and the Nationwide Class would not have been compromised.

116.  There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and the Nationwide Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Nationwide Class.  The PII of Plaintiff and the Nationwide Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

117.  As a direct and proximate result of Defendant's negligence, Plaintiff and the Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not

limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Nationwide Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Nationwide Class.

118.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

119.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Nationwide Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

120.   As a direct and proximate result of Defendant's negligence, Plaintiff and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

## COUNT II

**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Customer Subclass)**

121.   Plaintiff and the Customer Subclass re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 92.

122.   In obtaining loans from Defendant, Plaintiff and the Customer Subclass provided and entrusted their PII to Defendant.

123.   Defendant required Plaintiff and the Customer Subclass to provide and entrust their PII as condition of making purchases from Defendant.

124.   As a condition of making purchases from Defendant, Plaintiff and the Customer Subclass provided and entrusted their PII.  In so doing, Plaintiff and the Customer Subclass entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such PII, to keep such PII secure and confidential, and to timely and accurately notify Plaintiff and the Customer Subclass if their PII had been compromised or stolen.

125.   Plaintiff and the Customer Subclass fully performed their obligations under the implied contracts with Defendant.

126.   Defendant breached the implied contracts it made with Plaintiff and the Customer Subclass by failing to implement appropriate technical and organizational security measures designed to protect their PII against accidental or unlawful unauthorized disclosure or unauthorized access and otherwise failing to safeguard and protect their PII and by failing to provide timely and accurate notice to them that PII was compromised as a result of the data breach.

127.   As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Customer Subclass have suffered (and will continue to suffer) the threat of the sharing and detrimental use of their confidential information; ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

128.   As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Customer Subclass are entitled to recover actual, consequential, and nominal damages.

## COUNT III

### VIOLATIONS OF THE GEORGIA DECPTIVE PRACTICES ACT GA. CODE ANN. §§ 10-1-370, *ET SEQ.*

### (On Behalf of Plaintiff and the Georgia Subclass)

129.    Plaintiff and the Georgia Subclass re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 92.

130.    Defendant, Plaintiff, and the Georgia Subclass members are "persons" within the meaning of the Georgia Deceptive Trade Practices Act ("Georgia DTPA"), Ga. Code Ann. § 10- 1-370(5).

131.    The Georgia DTPA states the following at Ga. Code Ann. § 10-1-372:

> (a)    A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . . (5) Represents that goods or services have . . . characteristics, . . . uses, [or] benefits . . . that they do not have; . . . (7) Represents that goods or services are of a particular standard, quality, or grade . . . if they are of another; . . . [or] (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

132.    Defendant engaged in deceptive trade practices in violation of Ga. Code Ann. § 10-1- 372(a)(5), (7), and (12) by, among other things:

(a)    Omitting and concealing the material fact that it did not employ reasonable measures to secure consumers' PII. Defendant could and should have made a proper disclosure to consumers (including its

customers), during its loan process, or by any other means reasonably calculated to inform consumers of the inadequate data security; and

(b)    Making implied or implicit representations that its data security practices were sufficient to protect consumers' PII. Defendant acquired consumers' PII during the loan process. In doing so, Defendant made implied or implicit representations that its data security practices were sufficient to protect consumers' PII. By virtue of accepting Plaintiff's PII during the loan process, Defendant implicitly represented that its data security processes were sufficient to safeguard the PII.

133.   The Georgia DTPA states that "[i]n order to prevail in an action under this part, a complainant need not prove . . . actual confusion or misunderstanding." Ga. Code Ann. § 10-1- 372(b).

134.   The Georgia DTPA further states: "A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required." Ga. Code Ann. § 10-1-373(a).

135.   While Defendant provided notice of the Date Breach, Defendant has not provided sufficient details regarding the full scope of the Data Breach or any details related to the remedial measures that it has taken to improve and more fully

safeguard Plaintiff's and Georgia Subclass Members' data from future compromise. As a result, Plaintiff, Georgia Subclass Members, and Defendant's customers remain uninformed and confused as to the adequacy of Defendant's data security and Defendant's ability to protect the PII entrusted to it. Without adequate improvements, Plaintiff and Georgia Subclass Members data remains at an unreasonable risk for future compromise.

136. Moreover, Defendant, through its omissions, and *Notice of Data Security Breach* continues to represent and imply that its data security measures are adequate to protect the PII of Plaintiff and the Georgia Subclass. Such continued representations and implications, without disclosure of the fully scope of the Data Breach or remedial enhancements, place Plaintiff and Georgia Subclass Members at a future risk of harm, as Plaintiff, Georgia Subclass Members, and Defendant's clients are not fully informed as to whether Defendant's data security measures have been improved since the Data Breach. By all available measures, Defendant's data systems have not been adequately improved, and the Plaintiff and Georgia Subclass Members remain at an unreasonable risk from future cyberattacks.

137. Plaintiff and the Georgia Subclass, therefore, are entitled to the injunctive relief sought herein because, among other things, Defendant continues to retain their PII, future cyber-attacks targeting the same data are foreseeable, and Defendant has not provided sufficient notice identifying any remedial measures that

will protect the data from future attack. Moreover, absent injunctive relief, Defendant will continue to misrepresent and imply that its data systems are adequate to protect the PII of Plaintiff and the Georgia Subclass from future cyberattacks without providing any firm details or basis to support these representations.

138.    The Georgia DTPA states that the "court, in its discretion, may award attorney's fees to the prevailing party if . . . [t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Ga. Code Ann. § 10-1-373(b)(2). Defendant willfully engaged in deceptive trade practices knowing them to be deceptive. Defendant knew or should have known that its data security practices were deficient. This is true because, among other things, Defendant was aware that entities responsible for collecting and maintaining large amounts of PII, including Social Security numbers and financial information, are frequent targets of sophisticated cyberattacks. Defendant knew or should have known that its data security practices were insufficient to guard against those attacks.

139.    The Georgia DTPA states that "[c]osts shall be allowed to the prevailing party unless the court otherwise directs." Ga. Code Ann. § 10-1-373(b). Plaintiff and the Georgia Subclass are entitled to recover their costs of pursuing this litigation.

140.    As a result of Defendant's deceptive acts and practices, Plaintiff and the Georgia Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and non-monetary damages, as alleged herein.

141.   As a further result of Defendant's deceptive acts and practices, Plaintiff and the Georgia Subclass are at future risk of injury as a result of Defendant's misrepresentations as to its data security practices and the lack of information Defendant has provided regarding any enhancements to its data security.

142.   Plaintiff and the Georgia Subclass seek all monetary and non-monetary relief allowed by the Georgia DTPA, including injunctive relief and attorneys' fees.

## COUNT IV
## DECLARATORY JUDGMENT
### (On Behalf of Plaintiff and the Nationwide Class)

143.   Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 92.

144.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Further, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

145.   An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and the Nationwide Class's PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and the Nationwide Class from further data breaches that compromise their PII.  Plaintiff alleges that Defendant's data security measures remain inadequate. Defendant

publicly denies these allegations. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his PII and remains at imminent risk that further compromises of their PII will occur in the future. It is unknown what specific measures and changes Defendant has undertaken in response to the Data Breach.

146.    Plaintiff and the Nationwide Class have an ongoing, actionable dispute arising out of Defendant's inadequate security measures, including (i) Defendant's failure to encrypt Plaintiff's and the Nationwide Class's PII, including Social Security numbers, while storing it in an Internet-accessible environment and (ii) Defendant's failure to delete PII it has no reasonable need to maintain in an Internet-accessible environment, including the Social Security number of Plaintiff.

147.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant owes a legal duty to secure the PII of Plaintiff and the Nationwide Class;

b.    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII; and

c.    Defendant's ongoing breaches of its legal duty continue to cause Plaintiff harm.

148.    This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry and government regulatory standards to protect consumers' PII. Specifically, this injunction should, among other things, direct Defendant to:

d.    engage third party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

e.    audit, test, and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

f.    regularly test its systems for security vulnerabilities, consistent with industry standards;

g.    implement an education and training program for appropriate employees regarding cybersecurity.

149.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

150.   The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

151.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and others whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Nationwide Class and the Customer Subclass and appointing Plaintiff and his Counsel to represent such Classes;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or

disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v.   prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of

Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.     requiring Defendant to conduct regular database scanning and securing checks;

xi.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's

policies, programs, and systems for protecting personal identifying information;

xiv.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to

provide such report to the Court and to counsel for the Classes, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands that this matter be tried before a jury.

Dated: April 5, 2023                          Respectfully Submitted,

By: /s/ *M. Brandon Smith*
M. Brandon Smith
GA Bar 141418
**CHILDERS SCHLUETER & SMITH**
1932 North Druid Hills Road
Suite 100
Atlanta, GA 30319
Ph: 404-383-5321
Fax: 404-419-9501
bsmith@cssfirm.com

Brandon M. Wise*
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
314-833-4825
bwise@peifferwolf.com

David Almeida*
Elena A. Belov*
**ALMEIDA LAW GROUP**
849 W. Webster Ave.
Chicago, IL 60614
312-576-3024
david@almeidalawgroup.com
elana@almeidalawgroup.com

*Attorneys for Plaintiff and
the Putative Class*

*\*pro hac vice application forthcoming*